IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
MONICA GRIFFIN;                    )
SHABRE RINGGOLD; and               )   Civil Action
ISAIAH BOYER;                      )   No. 10-cv-05740
                                   )
            Plaintiffs             )
                                   )
        vs.                        )
                                   )
BERKS COUNTY HOUSING AUTHORITY;    )
SANDRA MILLER;                     )
BENNO RUHNKE;                      )
TANYA NELSON; and                  )
DEIDRE DURHAM,                     )
                                   )
            Defendants             )
```

                       *    *    *


APPEARANCES:

          MONICA GRIFFIN
          SHABRE RINGGOLD
          ISAIAH BOYER
               Plaintiffs Pro Se

          EDWIN L. STOCK, ESQUIRE
               On behalf of Defendants Berks County Housing
               Authority, Sandra Miller, Benno Ruhnke, and
               Tanya Nelson

          STEPHEN H. PRICE, ESQUIRE
               On Behalf of Defendant Deidre Durham

                       *    *    *


# O P I N I O N

# T A B L E   O F   C O N T E N T S

**Page**

SUMMARY OF DECISION...................................................... 4

JURISDICTION............................................................. 4

VENUE................................................................... 4

PROCEDURAL HISTORY...................................................... 5

    Original Complaint................................................ 5

    Motion to Dismiss................................................ 5

    Amended Complaint................................................ 7

    Motions for Summary Judgment...................................... 8

PLAINTIFFS' REMAINING CLAIMS............................................ 9

STANDARD OF REVIEW..................................................... 10

FACTS.................................................................. 12

    Parties.......................................................... 13

    The Tuckerton Avenue Apartment................................... 15

        *Inspections and Re-Inspections
        from 2002 through 2007*........................... 15

        *Inspections and Re-Inspections
        from 2008 and 2009*.............................. 17

    The 23rd Street House ...................................... 19

    Portability Meetings and New Vouchers............................ 20

    Deposition of Monica Griffin..................................... 21

CONTENTIONS OF THE PARTIES............................................. 22

    Contentions of Defendants........................................ 22

    Contentions of Plaintiffs........................................ 23

DISCUSSION............................................................. 24

    Title VI and the Fair Housing Act................................ 24

    *McDonnell-Douglas* Framework Applies............................ 25

    Prima Facie Case................................................ 27

    Miscellaneous Assertions of Plaintiffs.......................... 32

CONCLUSION............................................................. 33

JAMES KNOLL GARDNER,
United States District Judge

　　　　This matter is before the court on the following

motions for summary judgment: Defendants Housing Authority of

the County of Berks, Sandra Miller, Benno Ruhnke, and Tanya

Nelson's Motion for Summary Judgment ("Defendants' Motion for

Summary Judgment");[1] Defendant Deidre Durham's Motion for Summary

Judgment;[2] and Plaintiffs' Monica Griffin, Shabre Ringgold, and

Isiah Boyer's Motion for Summary Judgment ("Plaintiffs' Motion

for Summary Judgment").[3]

---

[1]　　　　Defendants' Motion for Summary Judgment was filed on August 11,
2014 (Document 76), together with Defendants Housing Authority of the County
of Berks, Sandra Miller, Benno Ruhnke, and Tanya Nelson's Brief in Support of
Motion for Summary Judgment (Document 76-1)("Defendants' Brief in Support");
Exhibit A to Defendants' Brief in Support (Document 76-1); Defendants Housing
Authority of the County of Berks, Sandra Miller, Benno Ruhnke, and Tanya
Nelson's Concise Statement of Material Facts in Support of Motion for Summary
Judgment (Document77)("Defendants' Statement of Facts"); and Exhibits A and B
to Defendants' Statement of Facts (Document 77).  Exhibit A is the Amended
Complaint filed March 5, 2012 (Document 30).  Exhibit B contains excerpts
from the May 23, 2014 deposition of plaintiff Monica Lee Griffin

[2]　　　　Defendant Deidre Durham's Motion for Summary Judgment was filed
on August 14, 2014 (Document 80), together with Defendant Deidre Durham's
Brief in Support of Motion for Summary Judgment (Document 80-1), and
Defendant Deidre Durham's Concise Statement of Material Facts in Support of
Motion for Summary Judgment (Document 81).

[3]　　　　Plaintiffs' Motion for Summary Judgment was filed September 8,
2014 (Document 85), together with Plaintiffs' Monica Griffin, Shabre
Ringgold, and Isiah Boyer Concise Statements of Material Facts in Support of
Motion for Summary Judgment (Document 86)("Plaintiffs' Statement of Facts");
and Exhibits A through F to Plaintiffs' Statement of Facts (jointly,
Documents 88-1 through 88-3).  On September 15, 2014, Plaintiffs' Monica
Griffin, Shabre Ringgold, and Isiah Boyer's Brief in Support of Motion for
Summary Judgment (Document 87)("Plaintiffs' Brief in Support") was filed.

## SUMMARY OF DECISION

For the reasons expressed below, I grant Defendants' Motion for Summary Judgment[4] and deny Plaintiffs' Motion for Summary Judgment.

Specifically, I grant defendants' motion and deny plaintiffs' motion because plaintiffs have failed to produce record evidence which, taken in the light most favorable to them, establishes a prima facie case of racial discrimination as required for plaintiffs to prevail on their claims under the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 through 3619, and 3631 ("FHA"), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d through 2000d-7 ("Title VI").

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims allegedly occurred in Berks County, Pennsylvania, which is located within this judicial district.

---

[4]       Because defendant Durham joins, in toto, her co-defendants in their motion for summary judgment and their opposition to plaintiffs' motion, any reference to Defendants' Motion for Summary Judgment incorporates the motion of defendant Durham.

-4-

## PROCEDURAL HISTORY

### Original Complaint

Plaintiffs initiated this action on November 15, 2010 by filing a three-count Complaint against defendants. Plaintiffs' claims arise from allegedly-discriminatory actions taken by defendants in connection with the plaintiffs' participation in the Section 8 Housing Choice Voucher program. In addition to plaintiffs Monica Griffin, Shabre Ringgold, and Isaiah Boyer, the Complaint also included Monica Griffin's three minor children, D.C., Jr., C.C. and E.C., as named plaintiffs pro se.

### Motion to Dismiss

On February 11, 2011 defendants filed a motion[5] which sought to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment pursuant to Rule 56.  Plaintiffs filed their response[6] in opposition on May 31, 2011.

By Order and accompanying Opinion dated September 24, 2014 and filed September 26, 2014,[7] I granted in part and denied in part defendants' motion to dismiss the Complaint.

---

[5]        Document 7.

[6]        Document 17.

[7]        Documents 19 and 18, respectively.

-5-

Specifically, I granted the motion to dismiss to the extent that it sought to dismiss plaintiff Monica Griffin's three minor children as plaintiffs in this action without prejudice for Ms. Griffin to secure counsel to represent her minor children, or for the minor children to assert their respective claims pro se within the applicable limitations period after they reach the age of majority.

Moreover, I granted the motion to dismiss regarding plaintiffs' Title VI claims against the individual defendants and dismissed those claims with prejudice.

Additionally, I granted the motion to dismiss regarding plaintiffs' Title VI claims against defendant Berks County Housing Authority with leave to amend in accordance with that Opinion.

However, I denied the motion to dismiss regarding plaintiffs' claims against the individual defendants under the Fair Housing Act, but directed plaintiffs to file an amended complaint providing a more definite statement of their Fair-Housing-Act claims against the individual defendants.

**Amended Complaint**

On March 5, 2012 plaintiffs Griffin, Ringgold, and Boyer filed their Amended Complaint,[8] which is the operative pleading in this matter.

On March 19, 2014 defendants Miller, Ruhnke, and Nelson filed a motion[9] which sought to strike or dismiss claims re-asserted against them in the Amended Complaint which had been dismissed from the original complaint with prejudice by my September 24, 2011 Order and Opinion.  On March 23, 2012 defendant Durham filed a motion[10] to join in that motion to strike or dismiss.

I granted those motions to strike or dismiss and to join as unopposed by Order dated January 4, 2013 and filed January 7, 2013.[11] Accordingly, I dismissed plaintiffs' Title VI claims against defendants Miller, Ruhnke, Nelson, and Durham from Counts 1, 2, and 3 of the Amended Complaint and dismissed plaintiffs' Fair Housing Act claims against defendants Ruhnke and Nelson from Counts 2 and 3 of the Amended Complaint.  The claims which remain in the Amended Complaint for disposition are set forth in the following section.

---

[8]         Document 30.

[9]         Document 31.

[10]         Document 39.

[11]         Document 40.

Each defendant filed an answer with affirmative defenses[12] to the Amended Complaint.

## Motions for Summary Judgment

The Rule 16 Status Conference Order of the undersigned dated and filed March 17, 2014,[13] established a pretrial deadlines and a trial-attachment date.

Following discovery, Defendants' Motion for Summary Judgment was filed on August 11, 2014.[14]  Defendant Deidre Durham's Motion for Summary Judgment was filed on August 14, 2014,[15] which joins the August 11, 2014 motion of the remaining defendants in its entirety.  Plaintiffs' Motion for Summary Judgment was filed was filed September 8, 2014.[16]

The parties have briefed and submitted supporting documents concerning those summary judgment motions.[17]  Hence this Opinion.

---

[12]        See Documents 32, and 35-38 filed March 19, 2012; Documents 41-43 filed January 17, 2013; and Document 44 filed January 18, 2013.

[13]        Document 49.

[14]        Document 76.

[15]        Document 80.

[16]        Document 85.

[17]        See documents and materials described at paragraphs (1) through (7) of the accompanying Order.

## <u>PLAINTIFFS' REMAINING CLAIMS</u>

The following claims remain in plaintiffs' Amended Complaint for disposition and are the subject of the within motions for summary judgment.

In Count 1 of the Amended Complaint, plaintiffs assert a claim against defendant Housing Authority under both the Fair Housing Act and Title VI, and against each individual defendant under the Fair Housing Act only.[18]  Count 1 is based on alleged racial discrimination relating to the inspections and re-inspections of the rental unit at 608 Tuckerton Avenue, Temple, Pennsylvania, where plaintiffs lived previously.[19]

In Counts 2 and 3 of the Amended Complaint, plaintiffs assert claims against defendant Housing Authority under both the Fair Housing Act and Title VI, and against defendants Miller and Durham under the Fair Housing Act only.[20]  Count 2 is based on alleged racial discrimination in the miscalculation the child support payments Ms. Griffin was receiving, which resulted in her being assessed an erroneously-inflated amount in monthly rent.[21]  Count 3 is based on alleged racial discrimination in the

---

[18]     Defendants' Motion for Summary Judgment at ¶ 5; Plaintiffs' Motion for Summary Judgment at page 1.

[19]     Plaintiffs' Brief in Support at page 5, footnote 1.

[20]     Defendants' Motion for Summary Judgment at ¶ 5; Plaintiffs' Motion for Summary Judgment at page 1.

[21]     Plaintiffs' Brief in Support at page 5, footnote 1.

refusal to provide plaintiffs with a proper "utility reimbursement allowance",[22] to be issued in a check payable by the Authority to Ms. Griffin.[23]

In Count 3 of the Amended Complaint, plaintiffs assert a claim against defendant Housing Authority under both the Fair Housing Act and Title VI, and against defendants Miller and Durham under the Fair Housing Act only.[24]

### STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense.  Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case."  Id. (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

---

[22]        Plaintiffs' Brief in Support at page 5, footnote 1.

[23]        See Amended Complaint at ¶ 67.

[24]        Defendants' Motion for Summary Judgment at ¶ 5; Plaintiffs' Motion for Summary Judgment at page 1.

Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment. Id.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion.  Fed.R.Civ.P. 56(c)(1).  Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

-11-

Where a defendant seeks summary judgment, the
plaintiff cannot avert summary judgment with speculation, or by
resting on the allegations in his pleadings, but rather he must
present competent evidence from which a jury could reasonably
find in his favor.  Ridgewood Board of Education v. N.E. for
M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen,
889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could
not lead a rational trier of fact to find for the non-moving
party, there is no genuine issue for trial." Id. (quoting
Matsushita Electric Industries Co. v. Zenith Radio Corp.,
475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))
(internal quotations omitted and alteration in original).

## FACTS

Upon consideration of the pleadings, record papers,
exhibits, affidavits, and depositions, and drawing all
reasonable inferences in favor of plaintiffs as required by the
forgoing standard of review, the pertinent facts are as
follows.[25]

---

[25]     As an initial matter, I note that the vast majority of paragraphs
in Plaintiffs' Statement of Facts (which they contend are undisputed and
demonstrate plaintiffs' entitlement to summary judgment) simply repeat the
allegations contained in their Amended Complaint.  Plaintiffs' Statement of
Facts conforms with the requirements of the Rule 16 Status Conference Order
dated and Filed March 17, 2014 in that the statement is divided into

(Footnote 25 continued):

-12-

## Parties

Plaintiffs are Monica Griffin, Shabre Ringgold, and Isaiah Boyer.  Ms. Ringgold and Mr. Boyer are siblings and the adult children of Ms. Griffin, who also has three minor children.  Plaintiffs are African-American.[26]

Defendant Berks County Housing Authority ("Housing Authority" or "Authority") is the local public housing authority

---

(Continuation of footnote 25):

individually-numbered paragraphs containing a citation to the record evidence supporting the factual assertion contained in each respective paragraph.

However, the Amended Complaint is the only material in the record of this case which plaintiffs cite in support of paragraphs 3-35 in Plaintiffs' Statement of Facts.  Paragraph 1 and paragraphs 38-41 are the only paragraphs which are supported by a citation to any record paper other than the Amended Complaint.

Plaintiffs -- as the non-moving party with respect to the defense motions and as the movant with the burden of proof at trial with respect to their own motion for summary judgment -- cannot simply rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

Plaintiffs are proceeding pro se and the pleadings filed by such parties are held to a less stringent standard than formal pleadings drafted by attorneys.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  Accordingly, I have reviewed all of the supporting documents filed by the parties in support of their respective positions on these cross-motions for summary judgment.

Nevertheless, allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to defeat summary judgment.  Liberty Lobby, 477 U.S. at 248-249, 106 S.Ct. at 2510-2511, 91 L.Ed.2d at 211-21.  In addition, although pro se filings are entitled to liberal construction, the plaintiff must still set forth and support facts sufficient to survive summary judgment.  Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Zilich v. Lucht, 981 F.2d 694, 695-96 (3d Cir. 1992); Houseknecht v. Doe, 653 F. Supp. 2d 547, 555 (E.D.Pa.2009) (McLaughlin, J.).

[26]     Plaintiffs' Statement of Facts at ¶ 3; Defendants' Statement of Facts at ¶ 2.

in Berks County, Pennsylvania which receives federal housing-assistance funding from the United States Department of Housing and Urban Development ("HUD") and administers the Section 8 Housing Choice Voucher Program within Berks County, Pennsylvania.[27]

Defendant Sandra Miller is employed by the Housing Authority as its Section 8 Coordinator.[28]

Defendant Benno Ruhnke is employed by the Housing Authority as a Housing Inspector.[29]

Defendant Tanya Nelson is Executive Director of the Housing Authority.[30]

Defendant Deidre Durham was, but no longer is, employed by the Housing Authority. During her employment with the Housing Authority, Ms. Durham performed "various [unspecified] duties".[31]

---

[27]      See Exhibit A to Plaintiffs' Statement of Facts (Document 88-1), copy of Letter of Determination of Compliance re. Griffin, Monica v. Berks County Housing Authority, HUD Case Number 03-09-0422-6 dated May 12, 2010 ("May 12, 2010 determination letter"), at page 1.

[28]      May 12, 2010 determination letter at page 3.

[29]      Id. at page 2.

[30]      Id.

[31]      Defendant Deidre Durham's Partial Answer and Affirmative Defenses to the Amended Complaint, which partial answer was filed March 19, 2012 (Document 38), at page 1.

-14-

Defendants Miller and Ruhnke are white.  Defendants Nelson and Durham are African-American.[32]

## The Tuckerton Avenue Apartment

### Inspections and Re-Inspections from 2002 through 2007

In November 2002, plaintiffs moved into a rental unit at 608 Tuckerton Avenue, Temple, Berks County, Pennsylvania (the "Tuckerton Avenue Apartment").[33]  The Tuckerton Avenue Apartment is a three-bedroom unit.

On November 15, 2002 George Ramos, a Housing Inspector for the Housing Authority, conducted the initial Housing Quality Standards ("HQS") inspection of the Tuckerton Avenue Apartment and "passed" the unit.[34]

On August 14, 2003 defendant Benno Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment and "failed" the unit based on certain deficiencies in the condition of the unit.  After the landlord, Robert Sensenig, was granted time to make repairs, Mr. Ruhnke re-inspected the unit on September 26, 2003.  The unit passed re-inspection.[35]

---

[32]     Exhibit A to Defendants' Motion for Summary Judgment (Document 76-1), excerpt of Certified Transcript of Oral Deposition of Monica Lee Griffin taken May 23, 2014 ("Griffin Depo. Trans."), at pages 99-100.  The same transcript excerpt was also filed as Exhibit B to Defendants' Statement of Fact (Document 77).

[33]     See May 12, 2010 determination letter at page 5.

[34]     Id. at page 5.

[35]     Id.

On September 13, 2004 Mr. Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment and again failed the unit.  Notes on the Inspection Checklist generated during the September 13, 2004 inspection state that certain 24-hour emergency repairs were completed.  Mr. Ruhnke re-inspected the unit on October 15, 2004.  The unit passed re-inspection.[36]

The Tuckerton property was sold on December 27, 2004. Berks Real Estates Solutions, LLC became plaintiffs' landlord at the Tuckerton Avenue Apartment thereafter.[37]

On September 12, 2005 Mr. Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment.  The unit passed inspection.[38]

On September 11, 2006 Mr. Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment.  The unit passed inspection.[39]

On September 10, 2007 Mr. Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment and failed the unit based on certain deficiencies in the condition of the unit.

---

[36]        May 12, 2010 determination letter at page 6.

[37]        Id. at pages 6-7.

[38]        Id. at page 7.

[39]        Id.

-16-

Mr. Ruhnke re-inspected the unit on November 8, 2007.  The unit passed re-inspection.[40]

### Inspections and Re-Inspections
### from 2008 and 2009

On September 3, 2008 Mr. Ruhnke conducted an annual HQS inspection of the Tuckerton Avenue Apartment and failed the unit based on certain deficiencies in the condition of the unit.[41]  On that same date, defendant Sandra Miller sent a letter to Ms. Griffin's landlord informing it (1) of the need for the emergency repairs within 24 hours and non-emergency repairs within 30 days, and (2) that housing-assistance payments to the landlord from the Housing Authority would be abated or terminated if those repairs were not completed and the unit did not pass a re-inspection on or before October 3, 2008.

Although the landlord submitted a receipt to Ms. Miller indicating that certain repairs had been completed, there is no indication that Mr. Ruhnke examined the 24-hour emergency repairs.  Moreover, the landlord requested and received from Ms. Miller a 30-day extension to complete the non-emergency repairs. Ms. Miller granted that extension, but there is no indication that Mr. Ruhnke conducted a re-inspection by October 3, 2008

---

[40]        May 12, 2010 determination letter at page 7.

[41]        Id. at page 8.

(the original date), November 3, 2008, or at any time later that year.[42]

On May 1, 2009, Michael P. Giles, Esquire, on behalf of Ms. Griffin and her family, sent a letter to Mr. Ruhnke advising him that the family was completely dissatisfied with his efforts to address the problematic conditions at the Tuckerton Avenue Apartment.  The May 1, 2009 letter from Attorney Giles stated that plaintiffs' landlord failed to make the required repairs, the landlord's failure could have been addressed by withholding rent payments to the landlord, and the Housing Authorities failure to withhold payment removed the landlord's incentive to complete the required repairs.[43]

On May 4, 2009, defendant Tanya Nelson, the Housing Authority's Executive Director, visited the Tuckerton Avenue Apartment.  During that visit, Ms. Nelson determined that there problems with the condition of the unit sufficient to fail a HQS inspection.  Because of the problems she observed on her May 4, 2009 visit and because the unit failed inspection in October 2008, Ms. Nelson began the process of abating payments to Ms. Griffin's landlord.[44]

---

[42]     May 12, 2010 determination letter at page 8.

[43]     Id.

[44]     Id. at page 9.

That same day, the Housing Authority contacted Ms. Griffin and scheduled a meeting for the next day, May 5, 2009, for the purpose of issuing Ms. Griffin a new housing-choice voucher which would allow her to move from the Tuckerton Avenue Apartment.  Ms. Griffin did not attend the May 5, 2009 meeting or the rescheduled meeting on June 26, 2009.[45]

On June 30, 2009 Ms. Griffin vacated the Tuckerton Avenue Apartment.  She did not inform the Housing Authority of the fact that she had moved and did not provide the Authority with a forwarding address or any other contact information.

On July 28, 2009 Ms. Griffin sent an email to Ms. Miller stating, "I am requesting an appointment to pick up a voucher ASAP!", and a second email providing a post-office box address and cellphone number where she could be reached.[46]

The Housing Authority issued a new voucher to Ms. Griffin on August 10, 2009.

## The 23rd Street House

On November 1, 2009 Ms. Griffin moved into a four-bedroom apartment at 35 North 23rd Street, Reading, Berks County, Pennsylvania (the "23rd Street House").[47]

---

[45]     May 12, 2010 determination letter at page 9.

[46]     Id.

[47]     Id.

On September 21, 2010 Benno Ruhnke conducted an annual HQS inspection of the 23rd Street House and failed the house based on certain deficiencies in the condition of the property. Mr. Ruhnke re-inspected the house on September 22, 2010.  The house passed re-inspection.[48]

### Portability Meetings and New Vouchers

On March 10, 2005, the Housing Authority issued Ms. Griffin a housing-choice voucher qualified for use toward rent on a four-bedroom unit.[49]  Ms. Griffin remained in the three-bedroom Tuckerton Avenue Apartment for more than four additional years, until May 2009.

In the summer of 2005, "portability" paperwork was prepared for Ms. Griffin which would have permitted her to moving to another county (Schuylkill County, Pennsylvania) where her assistance would be administered by another housing authority.  In August 2005, Ms. Griffin informed defendant Housing Authority that she did not want to move to Schuylkill County.[50]

Ms. Griffin scheduled a meeting at the Housing Authority for May 31, 2007 to discuss portability of her housing assistance benefits (that is, moving to another county where her

---

[48]      May 12, 2010 determination letter at page 7.

[49]      Id. at page 6.

[50]      Id. at pages 6-7.

assistance would be administered by another housing authority).[51]
She did not attend that meeting on May 31, 2007, nor when it was
rescheduled for June 27, 2007.[52]

On November 5, 2007 Ms. Griffin was again issued a
housing-choice voucher by the Housing Authority for a four-
bedroom apartment.  That voucher had an initial expiration date
of January 5, 2008, which was extended to March 4, 2008.[53]  Ms.
Griffin remained in the three-bedroom Tuckerton Avenue Apartment
for more than an additional year, until May 2009.

### Deposition of Monica Griffin

Defendants deposed plaintiff Monica Griffin in this
action.[54]  During her deposition, Ms. Griffin stated that she had
been subjected to "hostility" by the Housing Authority.[55]  She
explained that, by "hostility", she meant "the undone things",
things that should have been done by the Housing Authority but
were not.[56]  Ms. Griffin further stated that "[t]hey did not make

---

[51]        May 12, 2010 determination letter at page 7.

[52]        Id.

[53]        Id.

[54]        The deposition of Ms. Griffin was taken on May 23, 2014 by
Edwin L. Stock, Esquire, counsel for defendant Housing Authority and
defendants Miller, Nelson, and Ruhnke.  Stephen H. Price, Esquire, counsel
for defendant Deidre Durham, did not participate in the May 23, 2014
deposition of Ms. Griffin.  See Griffin Depo. Trans. at pages 1-3.

[55]        Id. at page 98.

[56]        Id.

sure things were done" with respect to her residences "on account of [her] race", because she is African-American.[57]

When asked by defense counsel why she believed that defendants' actions or inactions with respect to her housing were motivated by her race, Ms. Griffin stated that she "[could not] name one white person that has experienced anything like this under [the Housing Authority's] program" but she "[did] however know other African Americans that have suffered and endured things that [she] just [did]n't feel as though they should have endured."[58]  Ms. Griffin identified Lakeisha Williams, Audrey Jackson, and Tina Carraway as African Americans who were mistreated and discriminated against by the Housing Authority.[59]

Ms. Griffin testified that she could not recall anyone employed by the Housing Authority who ever said anything to her which she "attribute[d] to a racial motivation[.]"[60]

## CONTENTIONS OF THE PARTIES

### Contentions of Defendants

Defendants contend that summary judgment must be entered in their favor and against plaintiffs on each of

---

[57]      Griffin Depo. Trans. at pages 98-99.

[58]      Id. at page 99.

[59]      Id. at page 106.

[60]      Id. at page 100.

plaintiffs' remaining claims because plaintiffs cannot make out a prima facie case of racial discrimination against defendants as required for plaintiffs' claims under both the Fair Housing Act and Title VI of the Civil Rights Act of 1964.[61]

Specifically, defendants contend that claims of intentional discrimination under both Title VI and the Fair Housing Act are governed by the <u>McDonnell-Douglas</u>[62] burden-shifting framework and that summary judgment in favor of defendants is appropriate here because plaintiffs have not provided record evidence sufficient to establish a prima facie case of intentional discrimination, as required for them to progress past step one of the <u>McDonnell-Douglas</u> framework.[63]

### Contentions of Plaintiffs

Plaintiffs contend that defendants' motion for summary judgment should be denied and, instead, that summary judgment should be entered in their favor and against defendants because plaintiffs have established a prima facie case of racial discrimination and defendants' "reasons are...a pretext for unlawful discrimination".[64]  Plaintiffs further contend that they

---

[61]     Defendants' Motion for Summary Judgment at ¶ 7.

[62]     <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[63]     Defendants' Brief in Support at pages 6-10.

[64]     Plaintiffs' Motion for Summary Judgment at ¶ 5.

are entitled to summary judgment because "[d]efendants and investigators of ('Title VII'/'FHA') spoliated evidence; and are 'unworthy of belief' regarding both investigations" concerning civil-rights complaints made by plaintiffs to the United States Department of Housing and Urban Development and the Pennsylvania Human Relations Commission.[65]

## DISCUSSION

### Title VI and the Fair Housing Act

As noted above, plaintiffs assert their claims in this action pursuant to both Title VI and the Fair Housing Act.

Title VI "embodies a contract-like arrangement between Congress and entities that receive money from its appropriations: [T]he recipient's acceptance of the funds triggers coverage under the nondiscrimination provision." Burks v. City of Philadelphia, 950 F.Supp. 678, 682 (E.D.Pa. 1996)(Bechtle, S.J.)(quoting United States Department of Transportation v. Paralyzed Veterans of America, 477 U.S. 597, 605, 106 S.Ct. 2705, 2711, 91 L.Ed.2d 494 (1986))(internal quotations omitted).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or

---

[65]        Plaintiffs' Motion for Summary Judgment at ¶ 5.

be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Congress enacted the Fair Housing Act in 1968 to prohibit housing discrimination based on race, color, religion, or national origin. United States v. Branella, 972 F.Supp. 294, 297 (D.N.J. 1997).

The Fair Housing Act, specifically Title VIII of the Fair Housing Act, provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

### *McDonnell-Douglas* Framework Applies

As defendants correctly note, the McDonnell-Douglas burden-shifting framework applies to disparate-treatment claims of intentional racial discrimination under both Title VI and the Fair Housing Act. Manning v. Temple University, 157 Fed.Appx. 509, 513 (3d Cir. 2005)(citing Freeman v. Fahey, 374 F.3d 663, 666 (8th Cir. 2004)(regarding Title VI); Chauhan v. M. Alfieri Co., 897 F.2d 123, 127 (3d Cir. 1990)(regarding Fair Housing Act); and Pondexter v. Allegheny County Housing Authority, 2007 U.S.Dist. LEXIS 78532, *39-40 (W.D.Pa. Oct. 23, 2007)(regarding Title VI and Fair Housing Act).

The McDonnell-Douglas framework is a three-step
burden-shifting scheme utilized in discrimination cases, such as
this one, where a plaintiff does not provide any direct evidence
of discrimination.  Portis v. River House Associates, L.P.,
2008 WL 4452378, at *3 (M.D.Pa. Sept. 30, 2008).

Step one requires plaintiffs to establish a prima
facie case of discriminatory intent.  Keller v. Orix Credit
Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)(applying the
McDonnell-Douglas Test in an age-discrimination case).

The second step requires that a defendant "produce
evidence that is sufficient to support a finding that it had a
legitimate, nondiscriminatory reason for the [challenged
action]."  Id.  If a defendant cannot carry its burden of
production, judgment must be entered for the plaintiff.  Id.  If
defendant carries its burden of production, then the court
proceeds to the third step.

The third step requires that the plaintiff produce
evidence from which "a fact finder could reasonably either
(1) disbelieve the [defendant]'s articulated legitimate reasons;
or (2) believe that an invidious discriminatory reason was more
likely than not a motivating or determinative cause of the
[defendant]'s action."  Keller, 130 F.3d at 1108.

-26-

## **Prima Facie Case**

To establish a prima facie case of discrimination at the summary judgment stage, plaintiffs' record evidence "must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." Burton, 707 F.3d at 426 (quoting Duffy v. Paper Magic Group, 265 F.3d 163, 167 (3d Cir. 2001)).

To establish a prima facie case of racial discrimination under Title VI and the Fair Housing Act, plaintiffs must provide record evidence which would permit a reasonable factfinder to conclude that (1) they belong to a statutorily-protected class; (2) they asked defendants to enforce the rules equally; (3) that defendants did not do so; and (4) similarly-situated individuals outside of plaintiff's protected class were treated more favorably. Grant v. Kingwoods Apartments, 2001 U.S.Dist. LEXIS 20915, *4-6 (E.D.Pa. Dec. 18, 2001)(Giles, C.J.)(citing Dill v. Commonwealth of Pennsylvania, 3 F.Supp.2d 588, 590-591)(E.D.Pa. 1998)(Katz, S.J.)).

With respect to claims of intentional discrimination under Title VI, the United States Court of Appeals for the Third Circuit has held that plaintiffs may also establish intentional discrimination with a showing of "deliberate indifference." Blunt v. Lower Merion School District, 767 F.3d 247, 271-273 (3d Cir. 2014).

-27-

In order to demonstrate intentional discrimination under Title VI on a deliberate-indifference theory, a plaintiff must show that the defendant "had knowledge of the alleged misconduct [(that is, underlying racial discrimination or harassment)] and the power to correct it but nonetheless failed to do so. Id. at 273. Moreover, the defendant's knowledge must be actual, not merely constructive. Id.

Here, as explained below, thorough review of the record reveals that plaintiffs have not established a prima facie case of racial discrimination at step one of the McDonnell-Douglas framework, nor have they demonstrated intentional racial discrimination in violation of Title VI through a showing of deliberate indifference by any defendant. Accordingly, defendants are, and plaintiffs are not, entitled to summary judgment in their favor on plaintiffs' remaining claims. I grant defendants', and deny plaintiffs', respective motions for summary judgment accordingly.

Plaintiffs have not identified any policy or regulation of the Housing Authority that is, on its face, racially discriminatory.

Moreover, as noted above, there is no direct evidence here that any defendant intentionally discriminated against plaintiffs because they are African American.

-28-

Plaintiff Monica Griffin testified at her deposition that she did not recall anybody from the housing authority ever saying anything to her that she attributed as racially motivated.[66]  Ms. Griffin testified that she and her children (plaintiffs Ringgold and Boyer) were subjected to "hostility" because of their race by the Housing Authority and its employees.[67]  Ms. Griffin explained that, when she said the Authority and its employees were hostile toward her and her family, she was referring to things that the Authority and its employees failed to do.[68]

She also identified Lakeisha Williams, Audrey Jackson, and Tina Carraway as African-American participants in the Housing Authority's Section 8 voucher program who had experienced unspecified problems with their respective residences and with the Housing Authority.[69]

However, despite Ms. Griffin's generalized assertion at her deposition that the Housing Authority and its employees (including the individual defendants) treated her and her family badly -- with hostility -- because they are African-American,[70]

---

[66]      Griffin Depo. Trans. at page 100.

[67]      Id. at pages 98-99.

[68]      Id. at page 98.

[69]      Id. at pages 100-108.

[70]      Id. at pages 98-99.

Ms. Griffin did not identify any similarly-situated non-African-America Section 8 program participants who are treated more favorably than her and plaintiffs Ringgold and Boyer.[71]

Moreover, the generalized and conclusory averments in plaintiffs' Amended Complaint[72] -- echoed in their summary judgment papers[73] -- that similarly-situated people outside of plaintiffs' protected class were treated more favorably do not establish competent record evidence sufficient to entitle plaintiffs to relief on their motion for summary judgment or to survive defendants' motions for summary judgment.  Indeed, Plaintiffs' Brief in Opposition acknowledges that a party seeking to oppose summary judgment may not merely "rely upon base assertions, conclusory allegations or suspicions to support its claims."[74]

The record evidence submitted by plaintiffs actually undermines that assertion because it demonstrates that non-African-American individuals also experienced problems with

---

[71]         See generally, Griffin Depo. Trans.

[72]         Amended Complaint at ¶¶ 62, and 72.

[73]         Plaintiffs' Statement of Facts at ¶ 35; Plaintiffs' Brief in Support at page 6.

[74]         Plaintiffs' Brief in Opposition at page 5 (quoting Fireman's Insurance Company of Newark, New Jersey v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982)); see also footnote 25, supra.

inspections and re-inspection of residences by the Housing Authority's inspector, defendant Ruhnke.

Specifically, according to record evidence submitted by plaintiffs, defendant Ruhnke failed the 608 Tuckerton Avenue apartment on its 2008 annual HQS inspection and noted both emergency and non-emergency repairs that need to be made.[75] Furthermore, the record evidence demonstrates that the landlord failed to make all necessary repairs and that defendant Ruhnke did not re-inspect the unit as required to assure that those repairs were made.[76]

However, that same record evidence also demonstrates that defendant Ruhnke's failure to re-inspect plaintiffs' residence at 608 Tuckerton Avenue after it failed the 2008 HQS inspection was the third instance during that period when Mr. Ruhnke neglected to conduct a re-inspection after a Section 8 participant's residence failed a HQS annual inspection.  The two other Section 8 program participants whose units Mr. Ruhke neglected to reinspect were both white.[77]

In short, rather than demonstrating that a reasonable factfinder could conclude that non-African-American participants in the Section 8 voucher program were treated more favorably by

---

[75]        May 12, 2010 determination letter at page 10.

[76]        Id.

[77]        Id. at page 13.

the Housing Authority and its employees, plaintiffs' own record evidence is to the contrary, demonstrating that white, non-African-American Section 8 program participants experienced difficulties with the Housing Authority and its employees similar to those which form the basis of plaintiffs' claims of racial discrimination here.

For the reasons expressed above, plaintiffs have failed to establish a prima facie case of racial discrimination here at the first step of the McDonnell-Douglas framework.

Furthermore, because plaintiffs have not demonstrated that any Housing Authority employee engaged in racial discrimination, plaintiffs have similarly failed to demonstrate that the Housing Authority or any individual defendant had actual knowledge of racial discrimination and authority to prevent or stop it, but did not do so.  Therefore, to the extent that plaintiffs seek to assert a Title VI claim under a deliberate-indifference theory, they have not established such a claim sufficiently to survive defendants' motions for summary judgment.

## Miscellaneous Assertions of Plaintiffs

Plaintiffs assert that the defendants' motions for summary judgment should be denied because "Defendants and

investigators...spoliated evidence....”[78]   Additionally,
plaintiffs assert that they “lived under” Muhlenberg Township
and that the township “refused to cooperate during the
‘discovery process’”, and “spoliated evidence.”[79]   However,
plaintiffs do not develop, explain, or adequately support these
allegations of spoliation.   Accordingly, spoliation of evidence
does not warrant denial of defendants’ motions, nor the granting
of plaintiffs’ motion, for summary judgment.

        Additionally, plaintiffs assert that defendants’
motions for summary judgment should be denied because “the
defendants[’] reasons are...a pretext for unlawful
discrimination.”[80]   Plaintiffs’ assertions concerning pretext are
immaterial because, for the reasons expressed above, plaintiffs
have not provided sufficient record evidence which would require
the court to reach the pretext stage of the McDonnell-Douglas
framework.

**CONCLUSION**

        For the forgoing reasons, I grant Defendants’ Motion
for Summary Judgment and deny Plaintiffs’ Motion for Summary
Judgment.   Accordingly, I enter summary judgment in favor of

---

[78]         Plaintiffs’ Motion for Summary Judgment at ¶ 5; Plaintiffs’
Opposition to Summary Judgment at ¶ 5.

[79]         Plaintiffs’ Brief in Support at page 11.

[80]         Plaintiffs’ Motion for Summary Judgment at ¶ 5; Plaintiffs’
Opposition to Summary Judgment at ¶ 5.

defendants Berks County Housing Authority, Sandra Miller, Benno Ruhnke, Tanya Nelson, and Deidre Durham, and against plaintiffs Monica Griffin, Shabre Ringgold, and Isaiah Boyer on the claims remaining in the Amended Complaint.